IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR. NO. 24-00089 MWJS |
| Plaintiff, | ORDER DENYING MOTION TO RECUSE DISTRICT COURT JUDGE UNDER 28 U.S.C. § 455 |
| vs. | |
| DUANE F.K. DAWSON, | |
| Defendant. | |

## **INTRODUCTION**

Defendant Duane F.K. Dawson moves for the recusal of the undersigned U.S. District Judge under 28 U.S.C. § 455.  Dkt. No. 145.[1]  He bases his motion on the government's recent disclosure that in December 2022, during my service as an Assistant U.S. Attorney before taking the bench in January 2024, I conducted a proffer interview in which another defendant made comments about Dawson (as well as about many others).  The charges against the defendant who made these comments have no connection to the present case against Dawson.  And the comments themselves, though

---

[1]    Although § 455 uses the term "disqualification" rather than "recusal," the two terms are "sometimes used interchangeably" in "common parlance," Charles Gardner Geyh, Judicial Disqualification:  An Analysis of Federal Law at 2 (3d ed. 2020).  Given that Dawson's motion requests recusal, and given that this word choice has no bearing on the substantive analysis here, the court will join Dawson in using the words "recuse" and "recusal" throughout this order.

said to have been derogatory, are also unrelated to the charges in the present case.  I do not recall the proffered information myself.

The court has carefully considered the motion.  But it is also mindful that "a judge has as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require."  *Clemens v. U.S. Dist. Ct.*, 428 F.3d 1175, 1178 (9th Cir. 2005) (cleaned up).  Because the court can find no legitimate basis for recusal under the factual circumstances presented here, the recusal motion is DENIED.

## BACKGROUND

### A.    The Current Criminal Case

This is a criminal case involving fairly straightforward drug trafficking and firearm-related charges.  Although federal criminal cases sometimes are the result of long-term or complex criminal investigations, the charges here are the result of reactive law enforcement activities in the spring and fall of 2024, after the undersigned had been appointed to the bench on January 31, 2024.  *See* Dkt. No. 137 (describing the charges and underlying evidence in more detail).  Some of the charges stem from the fruits of search warrants executed by local law enforcement on Kauaʻi after Dawson became a suspect in an April 2024 shooting.  Others are the result of investigative work in the fall of 2024.  Each federal charge concerns drugs, firearms, or ammunition that Dawson allegedly possessed or sought to possess in those specific time periods in 2024.  No broader conspiracy is alleged.

Dawson was arrested on the strength of a criminal complaint filed on

December 7, 2024.  Dkt. No. 1.  An indictment was returned on December 19, 2024, Dkt.

No. 9, and superseded on January 16, 2025, Dkt. No. 30.  Dawson is detained pending

trial, which is set to begin on March 2, 2026.  Dkt. No. 136.

### B.    The Proffer Report and Status Conference

On January 22, 2026, the government disclosed, via letter submitted to the court

and separately transmitted to defense counsel, that just the day before, it had "c[o]me to

the government's attention that in December of 2022, while [the undersigned district

judge] w[as] an Assistant United States Attorney, [the undersigned] conducted a proffer

of a defendant," and that "[d]uring that proffer, among many other people from Kauai,

the defendant, Mr. Duane Dawson, was discussed."  Dkt. No. 142, at PageID.936.

The letter came on the eve of the government's deadline for providing notice of

evidence it intends to offer at trial under Federal Rule of Evidence 404(b), but the

government clarified that it would not "introduce any of this potential FRE 404(b)

evidence against Mr. Dawson" at the upcoming trial in this case, and further, that "the

information has no bearing on the charges or facts" in the current case.  *Id.*  Given these

circumstances, and with the understanding that the undersigned "ha[d] no independent

recollection" of any proffer discussion, the government concluded that this disclosure

does not require recusal.  *Id.*  To avoid unnecessarily placing the information from the

proffer report before the court, the government did not disclose the report's contents.

The court scheduled a status conference for Monday, January 26, 2026, during which the government confirmed that the information disclosed in the December 2022 proffer report is unrelated to the charges Dawson is currently facing (which is consistent with the nature of these charges, which, as noted, stem from reactive law enforcement investigations into events in April 2024 and the fall of 2024).  Nor was the proffer interview itself focused on Dawson—as the government explained, the proffer report spans six pages, and only three or four sentences concern Dawson.  The government also confirmed that after reviewing its records, it found no indication that I had ever taken action based on the proffer information about Dawson—whether opening an investigation or making any filings or submissions taking the position that the information was credible.[2]  In short, the information in the 2022 proffer report did not cause or inform the reactive investigation that preceded the 2024 charges in this case.

_____

[2]     Indeed, at a hearing on the recusal motion on February 4, 2026, the government represented that *no one* in the U.S. Attorney's Office opened any investigation or matter into Dawson while the undersigned was employed in that office.  That representation is consistent with the information the government provided to this court when the indictment was initially returned in December 2024.  The undersigned requires the government to file a form titled "Potential Recusal Information Regarding Judge Smith" in each criminal case assigned to me assigned to me.  The form requires the government to bring to the court's attention whether "[t]his case/matter was pending in the United States Attorney's Office on or before January 31, 2024," whether it is "more than minimally related to a case/matter" pending at that time, and whether it is "only minimally related" to the same.  In this case, the government instead marked that "[t]his case is unrelated to any case/matter pending in the United States Attorney's Office on or before January 31, 2024."  Dkt. No. 10-2.

4

During that same January 26, 2026 status conference, the undersigned confirmed that I indeed have no recollection of Dawson's name ever having been mentioned at any proffer interview.  Nor do I recall the substance of any such proffer.  As I explained at the hearing, in the time period of December 2022, my focus as an Assistant U.S. Attorney was largely devoted to the case of *United States v. Michael J. Miske, Jr.*, et al., Crim. No. 19-00099 DKW-KJM.  The Third Superseding Indictment in that case, which was returned on December 8, 2022, charged Miske and six other defendants collectively with, among other things, (i) racketeering conspiracy, which included acts of violence as well as various acts of fraud, including tax-related fraud; (ii) murder in aid of racketeering and conspiracy to commit the same; (iii) murder-for-hire conspiracy resulting in death and a separate murder-for-hire conspiracy in which the victim was not killed; (iv) kidnapping using a facility of interstate commerce and a conspiracy to do the same; (iv) use of a chemical weapon and conspiracy to commit the same; (v) drug trafficking; (vi) Hobbs Act robbery; (vii) bank fraud; and (viii) obstruction of justice.

As of December 2022, a jury trial was scheduled to begin in the *Miske* case on April 17, 2023, and was estimated to last up to five months.  (That did not change until January 2023, when the trial was continued to later that year).  Given the complex nature of the case and its charges, and the amount of work required to prepare for that trial, the undersigned was principally focused on the *Miske* case throughout the month of December 2022.  And it is undisputed (and confirmed during the January 26, 2026

hearing) that the December 2022 proffer information concerning Dawson did not stem from and has no relationship to the *Miske* case.

What remained of the undersigned's work time was heavily devoted to the various supervisory roles I then held, including as Chief of Appeals and Legal Strategy, as a Deputy Chief of the Criminal Division, and as the Criminal Civil Rights Coordinator.  In my role as Chief of Appeals and Legal Strategy, for example, I was responsible for reviewing and approving briefs that the U.S. Attorney's Office filed in the U.S. Court of Appeals for the Ninth Circuit.[3]  In my role as Deputy Chief of the Criminal Division, I provided advice to other Assistant U.S. Attorneys on investigations and cases, reviewed and approved various types of submissions, conferred with law enforcement agents, and handled personnel and administrative tasks.  There is no suggestion here that any information related to Dawson came to my attention at any time in my supervisory roles.

Finally, as the undersigned advised the parties during the January 26, 2026 conference, a review of publicly available docket information refreshed my recollection about the case of *United States v. Harville*, et al., Crim. No. 22-00095 JAO, which is one

---

[3]    In the time period between November 2022 and January 2023, for example, I approved (and signed as co-counsel) Ninth Circuit briefs in (1) *United States v. Salcedo*, No. 22-10151, 2022 WL 17217701 (filed Nov. 16, 2022); (2) *United States v. Latin*, No. 22-10173, 2022 WL 17406538 (filed Nov. 25, 2022); (3) *United States v. Opunui*, No. 22-10129, 2022 WL 17868844 (filed Dec. 16, 2022); and (4) *United States v. Beal*, No. 22-10034, 2023 WL 175238 (filed Jan. 6, 2023).

that I handled in my capacity as a line Assistant U.S. Attorney.  That case was charged

on October 20, 2022, and the two charged defendants were alleged to have committed

drug-related offenses centered on Kaua'i.  Although I did conduct proffers in the

*Harville* case, I do not recall any defendant making any mention of Dawson in a proffer,

and a review of the publicly available docket for that case did not refresh my

recollection about any such proffer information.[4]  Dawson was not a charged defendant

in the *Harville* case, and there is no suggestion that he was either a target or subject of

the investigation that preceded it.  Nor have the more recent submissions—including

the government's representation that the proffer report is six pages long, many people

from Kaua'i are discussed, and four sentences from the report relate to Dawson—

refreshed my recollection of having heard any information about Dawson.

        Given these circumstances—and because the government committed to not use

the information, which it means it will not offer it as evidence at trial or at any

sentencing (should there be one)—the court explained at the January 26, 2026 status

conference that it had found no basis for recusal.  Nonetheless, to ensure Dawson had

adequate time to consider filing a motion for disqualification—while being mindful of

---

[4]      Dawson's motion states that the undersigned "recalled that case, but had no
memory of any details of it."  Dkt. No. 145, at PageID.963.  To clarify:  The undersigned
of course does recall the *Harville* case and some of its details.  The undersigned also has
been able to refresh my recollection using publicly filed information about the case.
What the undersigned does not recall is any proffer in that case in which Dawson's
name was mentioned, let alone the details of any proffered information about Dawson.

the firm trial date of March 2, 2026, and fast-approaching pretrial deadlines—the court gave Dawson a deadline of January 29, 2026, to file any such motion. The court ordered Dawson "not [to] include details that would reveal the substance of the proffer report," but also made clear Dawson was free to "argue that those details should be presented to the court before a decision on the motion is made." Dkt. No. 141, at PageID.934.

The court also invited Dawson to ask the undersigned any pertinent questions they might have, and Dawson's counsel indicated they had none. Dawson's counsel did ask for a copy of the proffer report, however, so that they could evaluate the information when advising their client and deciding whether to file a motion. The government did not object to providing the report to counsel on an attorney's-eyes-only basis, so long as all non-pertinent information could be redacted. Dawson's counsel, for their part, did not oppose the requested redactions, but argued that it was necessary for them to show the redacted report to their client.

Over the government's objection (which was based on the government's concern that the information could lead Dawson to recognize the individual who proffered, and that this would pose safety risks for that individual), the court ordered the government to produce the redacted proffer report to Dawson's counsel on an attorney's-custody-only basis—that is, with counsel allowed to show the redacted report to Dawson and discuss its contents with him, but not to leave him with a copy. The government produced the redacted report that same day.

8

C.      **Dawson's Recusal Motion**

On January 29, 2026, Dawson filed his timely recusal motion.  The motion is based on the government's recent disclosure of the information in the proffer report.  It observes that, following the January 26, 2026 conference, the government confirmed with Dawson's counsel that the proffer report stems from a proffer interview held in connection with the *Harville* case described above.  And it argues for the recusal under three separate provisions of 28 U.S.C. § 455.  It does not, however, argue that the court must review the proffer information to properly assess whether recusal is required.[5]

The court held a hearing on the motion on February 4, 2026.  Dkt. No. 153.

## DISCUSSION

To safeguard the right of all persons to a "fair trial in a fair tribunal," *In re Murchison*, 349 U.S. 133, 136 (1995), Congress enacted 28 U.S.C. § 455.  The statute has two key subsections.  Section 455(a) contains the general command that "any justice, judge, or magistrate judge of the United States" recuse or be disqualified from "any proceeding in which his impartiality might reasonably be questioned."  28 U.S.C. § 455(a).  Section 455(b), in turn, provides specific "circumstances" in which recusal is required.  These include, for example, the provisions requiring recusal when a family

---

[5]      Dawson did seek to file the proffer report under seal to complete the record for possible appeal.  Dkt. No. 146.  The court denied that motion without prejudice; as the court explained, "[f]iling the document at this early stage is unnecessary, as Dawson does not argue that the court must evaluate the contents of the proffer to properly resolve his motion to recuse."  Dkt. No. 147.

member is a party or lawyer in a proceeding, *id.* § 455(b)(5), and when a judge has a financial interest in the subject matter of controversy, whether individually or as a fiduciary, *id.* § 455(b)(4).

In this case, Dawson principally argues that the undersigned must recuse under the more general requirement of § 455(a) because my "impartiality might reasonably be questioned" in light of the December 2022 proffer.  Dawson also relies on two of the more specific provisions of § 455(b), contending that the undersigned must recuse because I allegedly have "personal knowledge of disputed evidentiary facts concerning the proceeding," *id.* § 455(b)(1), and because I allegedly "served in governmental employment and in such capacity participated as counsel, advisory or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy," *id.* § 455(b)(3).[6]

The court considers each of Dawson's arguments for recusal in turn, beginning with the more particularized requirements of § 455(b) and concluding with the more general requirements of § 455(a).

---

[6]    Because Dawson has moved for the undersigned's recusal only under § 455, and does not contend that the undersigned holds any actual bias or prejudice against Dawson, it is appropriate for me to resolve the motion myself.  *See United States v. Sibla*, 624 F.2d 864, 868 (9th Cir. 1980) (recognizing that "section 455 includes no provision for referral of the question of recusal to another judge"); *see also United States v. Champlin*, 388 F. Supp.2d 1177, 1180 (D. Haw. 2005).  A motion under 28 U.S.C. § 144, by contrast, must be assigned to another judge for ruling.  *Id.* at 1180 n.3.

### A.      Section 455(b)(1)

Dawson argues that the undersigned must recuse under § 455(b)(1), which requires recusal whenever a judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."  The first part of this subsection focuses on a judge's inability to be fair to a party; the second part of it focuses, by contrast, on whether the judge can fairly evaluate "evidentiary facts."  The undersigned has no personal bias or prejudice against Dawson, and Dawson does not suggest otherwise.  *See* Dkt. No. 145, at PageID.970 ("This motion is not grounded in any allegation of actual bias[.]").  And so only the second part of § 455(b)(1) is at issue here.

In considering whether a judge has "personal knowledge of disputed evidentiary facts concerning the proceeding," three features of the statutory language are salient.  First, the judge must have knowledge that is "personal" in some sense.  Second, the personal knowledge must concern facts that are not only "evidentiary," but also "disputed."  Third, those disputed evidentiary facts must "concern[] the proceeding."

1.  The threshold question is whether the undersigned has potentially relevant "personal knowledge."  As noted, the undersigned does not recall any proffer in which Dawson's name was mentioned, does not recall which defendant made the proffer statements at issue, and does not have any recollection of the substance of the proffer.  But the court agrees with Dawson that the question is not whether the judge "actually

11

knew of facts" requiring recusal, but instead whether "the public might reasonably believe that he or she knew."  Dkt. No. 145, at PageID.966 (quoting *Liljeberg v. Health Serv's Acquisition Corp.*, 486 U.S. 847, 859–60 (1988)).[7]

That raises the question of whether, under the particular factual circumstances of this case, the public really would "reasonably believe" that the undersigned recalls the December 2022 proffer information.  Dawson does not appear to engage with this question, instead assuming that a reasonable member of the public would necessarily expect the undersigned to remember a mention of Dawson in a proffer from over three years ago.  But that assumption is not well founded.  In assessing whether a judge would be expected to remember information, a reasonable member of the public would not make an uninformed or offhand judgment.  Instead, in making that assessment, the reasonable member of the public would be "*informed of all the surrounding facts and circumstances.*"  *Cheney v. U.S. Dist. Ct.*, 541 U.S. 913, 924 (2004) (mem.) (Scalia, J.) (emphasis in original; citations omitted)); *see also id.* (explaining that "inaccurate and uninformed opinion cannot determine the recusal question").  In this case, those circumstances include the fact that the information about Dawson takes up a mere four

---

[7]    It may be more precise to say that this is not technically required by § 455(b)(1), but instead by the more general (and objective) requirements of § 455(a).  *See Liljeberg*, 486 U.S. at 859 (reasoning that § 455(a) does not require a showing of actual knowledge because the provision "makes no mention of knowledge," and contrasting it with § 455(b)(4), which, like § 455(b)(1), "expressly provides that the judge must *know* of his or her interest").  But that technical distinction is not material to the analysis here.

sentences in a six-page proffer report, and that "many other people" were discussed, apart from Dawson.  Dkt. No. 142, at PageID.936.  The reasonable person would, therefore, understand that the proffer was not focused on Dawson, and that information about him was a relatively small part of what was discussed.  The reasonable person would also be aware that the proffer arose in a criminal case completely unrelated to Dawson, that Dawson was not under investigation at the time of the proffer, and that Dawson's name therefore would not have had any significance to the undersigned during the proffer.  Moreover, a reasonable person would know that the undersigned did not ascribe any significance to Dawson or the information about him after the fact: the undersigned did not open any investigation into Dawson following the proffer, did not make any submission in which the information against Dawson was credited, and did not otherwise express any opinion about the veracity of the information about Dawson.  Indeed, the reasonable person would be aware that the undersigned did not even arrange for a second proffer in which to flesh out the details of the four sentences of information that had been provided about Dawson.

What is more, a reasonable person would be informed of the fact that the undersigned, in the December 2022 time period, was largely focused on preparing for a complex upcoming trial in the *Miske* case—which has no connection to Dawson—as well as continuing to perform various supervisory responsibilities that had no connection to Dawson.  And given the upcoming trial in the *Miske* case, a reasonable

13

person would be aware that the U.S. Attorney's Office would not have tasked the undersigned with opening up a new investigation into any of the "many other people" whose names happened to come up during the proffer.  Dkt. No. 142, at PageID.936.

Lastly, a reasonable person would be aware that while a sitting judge has access to court records (and therefore can refresh their recollections about past charged criminal cases using those records), a sitting judge generally does not have access to the investigative files of the U.S. Attorney's Office.  A reasonable person would, therefore, appreciate that a judge would not be positioned to refresh their recollection about a fact mentioned during a proffer, given no significance at the time, and inaccessible to the judge in their current role.

To be sure, there likely are certain types of information that a member of the public might reasonably believe that a person would never forget.  For example, one would expect a person to recall the details of a proffer concerning an unusual or extremely serious crime—such as a terrorist attack or a serious crime of violence.  But there is no suggestion here that the proffered information in this case rises to that level.  To the contrary, Dawson has not argued that a review of the substance of the proffer is needed to fairly assess whether recusal is required.

For these reasons, the court concludes that Dawson has not shown that the undersigned has any "personal knowledge" that might require recusal.  That is not merely because the undersigned does not recall the information, but because there is no

14

basis here to conclude that "a reasonable person, knowing the relevant facts, would expect" the undersigned to recall the information. *Liljeberg*, 486 U.S. at 850.

Dawson counters that § 455(b)(1) "turns on acquisition, not the Court's present recollection or reliance." Here he appears to contend—without any citation to authority—that even if a judge does not recall information and would not reasonably be expected to recall it, that recusal is still required, so long as they once actually heard the information. The text of § 455(b)(1) is not consistent with this argument. It does not compel a judge to recuse themselves whenever they ever "acquired" or "had" qualifying personal knowledge. Recusal is only required if the judge "has" such personal knowledge. 28 U.S.C. § 455(b)(1) (requiring disqualification when a judge "*has* a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding" (emphasis added)). Its language focuses not on the past or the future, but on the present. In that way, the text of § 455(b)(1) tracks the language of § 455(b)(4), which requires recusal only when a judge "has" a financial interest in the subject matter at controversy—a requirement that turns on whether the judge currently holds that interest, rather than whether they might have held such an interest in the past.

The bottom line is that when, as here, a judge does not actually recall information and a reasonable person would not expect them to remember it, the statutory requirement of presently having personal knowledge is not met.

2.  But even if the undersigned could be said to have "personal knowledge" of the 2022 proffer information about Dawson, that alone would not require recusal under § 455(b)(1).  Recusal would only be warranted if the 2022 proffer information qualified as "disputed evidentiary facts" and if those facts "concern[ed] the proceeding."  28 U.S.C. § 455(b)(1).  Neither of these requirements is met here.

For one thing, the 2022 proffer information is not "disputed":  the government has committed itself to *not* making any argument that the proffer information is accurate during the proceedings in this case.  For another, it is not an "evidentiary fact":  the government has committed to not using the information, which means it will not offer the information as evidence at trial or at any sentencing (should there be one).  And finally, the proffer information does not "concern[] the proceeding":  the information did not prompt the reactive investigation that preceded the charges in this case, does not constitute evidence of the crimes charged in this case, and has no factual connection to the present charges.

Dawson has no answer to the first two of these problems for his position; he offers no argument for how the 2022 proffer information could be viewed as "disputed evidentiary facts" in a case in which the government has committed itself to not offering the evidence or contending that it is accurate.  But he does argue that the proffer information could be said to "concern[] the proceeding."  In Dawson's view, the undersigned must recuse myself because I "received the allegations about

16

Mr. Dawson's 'other bad acts,'" which Dawson contends is sufficient to "trigger

§ 455(b)(1)'s protections."  Dkt. No. 145, at PageID.970.  Dawson's position appears to

be that § 455(b)(1) requires recusal because the proffer information could, in the

government's view, constitute "other acts" evidence under Rule 404(b) of the Federal

Rules of Evidence.

The argument is unpersuasive.  As the government confirmed at the hearing on

Dawson's motion, it views the proffer information as falling under Rule 404(b) only

because it is *not* related to any of the charges brought in this case—that is, because there

is no "contextual or substantive connection between the proffered evidence and the

alleged crime to justify exempting the evidence from the strictures of Rule 404(b)."

*United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1013 (9th Cir. 1995); *see also id.* at 1012

(explaining that "other act" evidence "need not meet the requirements of Rule 404(b)"

when "it constitutes a part of the transaction that serves as the basis for the criminal

charge").  The fact that the proffer information has no factual connection to Dawson's

current charges weighs against his argument for recusal, not in favor of it.  And while

even Rule 404(b) evidence could in theory qualify as "disputed evidentiary facts

concerning the proceeding" if actually offered, it cannot so qualify here because the

government has committed itself to not offering it.  While the proffer information is

undisputedly about Dawson, it does not concern "disputed evidentiary facts concerning

the proceeding" against Dawson.

Several precedents support these conclusions.  Take *United States v. Silver*, 245 F.3d 1075 (9th Cir. 2001), in which the Ninth Circuit held that a trial judge was not required to recuse himself from a criminal case involving a count of making false statements to the U.S. Department of Defense.  The Ninth Circuit reached this conclusion even though the trial judge had served as U.S. Attorney prior to the bench and, in that role, had overseen two years of an earlier investigation into the defendant for mail fraud—which ultimately resulted in a mail fraud conviction.  *Id.* at 1078.  The Ninth Circuit noted that there was "no factual connection or relationship between the current case" and the earlier "mail fraud case," and that the mail fraud conviction "was used only, for purposes of sentencing, to enhance the instant offense of making a false statement."  *Id.* at 1079–80.  No one so much as suggested that the trial judge had an obligation to recuse himself because of his "personal knowledge" of a two-year criminal investigation he oversaw and authorized into the very defendant over whose criminal case he was now presiding.  Recusal plainly was not required under that ground, because even though the criminal conviction resulting from that earlier investigation was presented to the trial judge for limited sentencing enhancement purposes, no facts from that earlier case constituted "disputed evidentiary facts."  It follows that, here, where a statement in an earlier proffer did not even lead to an investigation (let alone a prior conviction), and where that earlier proffer statement will not be put in front of the

court even for limited sentencing purposes, Dawson cannot show that the proffer statement qualifies under § 455(b)(1) as "disputed evidentiary facts."

Consider, too, the Eighth Circuit's decision in *United States v. DeLuna*, 763 F.2d 897 (8th Cir. 1985).  There, the Eighth Circuit rejected the argument that a U.S. magistrate judge who had signed a search warrant for the residence of a now-charged defendant, Carl DeLuna, should have recused from reviewing the warrant application. Although the magistrate judge had "received extrajudicial information" about DeLuna and his criminal associates while serving as an Assistant U.S. Attorney—which included being "privy to investigative reports which suggested that Carl DeLuna was engaged in anti-social behavior"—the court concluded that recusal was not required. *Id.* at 907.  It observed that "[k]nowledge of and from prior investigation does not necessarily require recusal," and concluded it did not require recusal in that case because there was no argument "that the investigation which led to the present prosecution was related to the investigation and prosecution handled by the magistrate [judge] when he was an Assistant United States Attorney."  *Id.* at 908.  Whatever information the magistrate judge might have learned about DeLuna, in other words, did not involve disputed evidentiary facts concerning the current proceeding.

The Fifth Circuit reached a similar conclusion in *United States v. Outler*, in which it found no basis for the recusal of a U.S. magistrate judge who had, prior to taking the bench, participated in a probation revocation hearing involving allegations that a doctor

19

had prescribed drugs without a legitimate medical purpose.  659 F.2d 1306, 1312 (5th Cir. 1981).  About three years after that hearing, the now-magistrate judge granted a search warrant in connection with a new investigation into the defendant's medical practice.  *Id.*  Although the magistrate judge plainly had personal knowledge of the prior probation revocation hearing—and the allegations raised therein—the Fifth Circuit recognized that the "drugs, agents, dates, and all other details set forth in the affidavit were wholly independent of the events involved in the earlier probation revocation hearing," and that there "clearly was no connection between the two proceedings."  *Id.*  And so the magistrate judge was not required to recuse himself from signing the affidavit under § 455(b)(1).

Another precedent embracing similar reasoning is *Easley v. Univ. of Mich. Bd. of Regents*, 906 F.2d 1143 (6th Cir. 1990).  That case concerned a plaintiff's "ongoing effort to obtain, through litigation, a law degree and damages from The University of Michigan," after he was suspended for alleged plagiarism.  *Id.* at 1143–44.  The presiding trial judge was an alumnus and volunteer fundraiser for the school, and throughout trial, had "been a member of the Committee of Visitors" of the law school, "the purposes of which are essentially social and informational."  *Id.* at 1145–46.  The judge's ongoing association with the law school very well *could* have exposed him to extrajudicial information related to the claims at issue in the lawsuit—and undoubtedly gave the judge personal knowledge about the law school, which was a party to the suit

20

over which he was presiding.  And it stands to reason that if any factual information the

trial judge learned as a member of the Committee of Visitors had been offered as a

disputed evidentiary fact, then § 455(b)(1) would have been triggered.  But no such fact

was ever offered.  And so, in *Easley*, recusal was not required.  *Id.* at 1147.

In short, even if the court could recall (or would be held to recall) the 2022 proffer

information about Dawson, that information does not qualify as "disputed evidentiary

facts concerning the proceeding" here.  This court therefore cannot legitimately recuse

itself from this assigned case under § 455(b)(1).

### B.    Section 455(b)(3)

Dawson briefly suggests that § 455(b)(3) "could" be applicable, Dkt. No. 145, at

PageID.970, but he astutely does not dwell on this argument.  It holds no merit.

Section 455(b)(3) requires recusal when a judge "has served in governmental

employment and in such capacity participated as counsel, advisor or material witness

concerning the proceeding or expressed an opinion concerning the merits of the

particular case in controversy."  Given that the undersigned took the bench in January

2024, nearly a year before the charges in this case were brought, an argument based on

§ 455(b)(3) does not begin from a position of strength.  And while recusal would be

required under § 455(b)(3) if a judge participated as counsel or advisor in the

*investigation* that preceded the charges in a case assigned to them, *see, e.g., United States

v. Arnpriester*, 37 F.3d 466 (9th Cir. 1994), Dawson's recusal motion disavows any

21

"conten[tion] that the Court participated in the instant prosecution *or investigation*."

Dkt. No. 145, at PageID.970 (emphasis added).  That disavowal is well-grounded:  the

charges in this case resulted from reactive law enforcement work in the spring and fall

of 2024 that occurred after the undersigned had taken the bench in January 2024, and

the government (without contradiction) reports that the December 2022 proffer

information does not form a part of the investigation that preceded the current charges.

Nor does Dawson suggest that the undersigned ever expressed any opinion about the

merits of this case or its preceding investigation.  Indeed, there is no suggestion that the

undersigned ever expressed an opinion about the credibility of the proffer information.

Dawson nonetheless argues that "the Court's prior senior prosecutorial role and

receipt of extrajudicial statements concerning the defendant could be deemed

participation 'concerning the proceeding,'" thus requiring recusal under § 455(b)(3).  *Id.*

The Ninth Circuit's precedent undermines this contention.  In *Silver*, the Ninth Circuit

case discussed above, the circuit held that a former U.S. Attorney—a position much

more "senior" than those held by the undersigned—did not abuse his discretion by

declining to recuse himself under § 455(b)(3), even though he had overseen two years of

an earlier criminal investigation into the same defendant now before him in a new

criminal case, and even though the conviction from that earlier case was presented to

him for sentencing enhancement purposes.  245 F.3d 1075.  The court noted that it had

previously held, in *Gravenmier v. United States*, 469 F.2d 66 (9th Cir. 1972), that "a judge,

who as United States Attorney was of counsel when a defendant was tried and convicted of one charge, is not disqualified from presiding at the prosecution of the same defendant for an unrelated offense." *Silver*, 245 F.3d at 1080. It favorably cited other circuits that have interpreted § 455 "to require disqualification of a judge 'only when the case before him is the same as or is related to the case which was within his jurisdiction as prosecuting attorney.'" *Id.* at 1079 (quoting *Jenkins v. Bordenkircher*, 611 F.2d 162, 165 (6th Cir. 1979)); *see also id.* (quoting *Outler*, 659 F.2d at 1312–13, for the proposition that "recusal is only necessary if the 'two proceedings have a common, single transaction or event at issue'"). And it concluded that because the past criminal investigation was not factually related to the present criminal case, and because that past case was only being offered for non-substantive reasons, the trial judge was not required to recuse under § 455(b)(3). *Silver*, 245 F.3d at 1080 (noting that the judge "was not asked [in the present case] to make any determinations or to render an opinion on the mail fraud conviction").

In this case, there exists no "common, single transaction or event at issue" between the information in the 2022 proffer in which the undersigned participated and the charges in this case. Indeed, there is no factual overlap or connection whatever. It follows that there is no basis to conclude that the undersigned served as counsel or advisor in the present case.

As a rejoinder, Dawson offhandedly suggests that the 2022 proffer information is "relevant to the current case," but his only support for that assertion is that the information could possibly have been offered at trial as "other acts" under Rule 404(b). As explained earlier, the very reason why the government labeled the proffer information under Rule 404(b) is because it is *not* factually connected or related to the present case.  It is always possible that a defendant's alleged past conduct or prior convictions could be offered in a factually unrelated case for some valid evidentiary purpose under Rule 404(b)—and, in that event, a connection between the otherwise disconnected proceedings could come into existence.  But when, as here, the government commits itself to not offering evidence of that alleged past conduct, no connection between the past information and present proceeding in fact exists.

That is why the U.S. magistrate judges in *DeLuna* and *Outler* were not considered government counsel in a current criminal case against a defendant merely because they participated in prior criminal proceedings against that same person.  *See DeLuna*, 763 F.2d 897; *Outler*, 659 F.2d at 1312.  The same conclusion follows here:  the undersigned is not properly viewed as having participated as government counsel in Dawson's current case merely because I heard unrelated information about him during a proffer in an unrelated case.  And just as in *Silver*—indeed, to a greater degree than in *Silver*—the undersigned is "not asked to make any determinations or to render an opinion on"

the information obtained through the proffer.  245 F.3d at 1080.  Recusal is not required under § 455(b)(3).

### C.    Section 455(a)

Dawson's final argument for recusal rests on the more general requirements of § 455(a).  He notes that "[w]hile serving as Deputy Chief of the Criminal Division of the U.S. Attorney's Office," the undersigned "personally received a proffer from another defendant that included statements concerning the same defendant, Mr. Dawson, now standing before the Court."  Dkt. No. 145, at PageID.966.  And he argues that a "reasonable, well-informed observer" would view the "combination of prior senior prosecutorial authority and personal exposure to extrajudicial statements about the defendant" to "raise questions about impartiality, regardless of present recollection." Dkt. No. 145, at PageID.967.

1.  Under § 455(a), the question is not whether a judge believes he can preside impartially over a case.  Rather, it is whether "a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned."  *Pesnell v. Arsenault*, 543 F.3d 1038, 1043 (9th Cir. 2008) (quotation marks and alterations omitted), *abrogated on other grounds by Simmons v. Himmelreich*, 578 U.S. 621 (2016); *see also United States v. Champlin*, 388 F. Supp.2d 1177, 1182 (D. Haw. 2005) ("The relevant inquiry is not the reality of bias or prejudice but its appearance." (cleaned up)).  It is, in other words, an objective standard.

25

The application of this objective standard "requires a nuanced approach." *United States v. DeTemple*, 162 F.3d 279, 287 (4th Cir. 1998). On the one hand, "the hypothetical reasonable observer is not the judge himself or a judicial colleague but a person outside the judicial system." *Id.* That is because "[j]udges, accustomed to the process of dispassionate decision making and keenly aware of their Constitutional and ethical obligations to decide matters solely on the merits, may regard asserted conflicts to be more innocuous than an outsider would." *Id.; accord Liljeberg*, 486 U.S. 847, 864–65 (observing that "people who have not served on the bench are often all too willing to indulge suspicions and doubts concerning the integrity of judges").

On the other hand, the "reasonable person" is "not someone who is hypersensitive or unduly suspicious, but rather is a well-informed, thoughtful observer." *United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008). As noted earlier, "[i]t is well established that the recusal inquiry must be made from the perspective of a *reasonable* observer who is *informed of all the surrounding facts and circumstances*." *Cheney*, 541 U.S. at 924 (mem.) (Scalia, J.) (emphasis in original; citations omitted).

Moreover, as the Ninth Circuit has cautioned, the "reasonable person" standard "must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice." *Holland*, 519 F.3d at 913. This is because, as then-Judge Breyer explained, "the disqualification decision must reflect *not only* the need to secure public confidence

26

through proceedings that appear impartial, *but also* the need to prevent parties from too easily obtaining the disqualification of a judge, thereby potentially manipulating the system for strategic reasons, perhaps to obtain a judge more to their liking."  *In re Allied-Signal Inc.*, 891 F.2d 967, 970 (1st Cir. 1989) (Breyer, J.) (cleaned up).

In applying this nuanced "reasonable person" standard, a judge must "take a fact-driven approach that may turn on the subtleties of each case."  *United States v. Hunt*, 153 F.4th 858, 864 (9th Cir. 2025) (cleaned up).  And so "the analysis of a particular section 455(a) claim must be guided, not by comparison to similar situations addressed by prior jurisprudence, but rather by an independent examination of the unique facts and circumstances of the particular claim at issue."  *Clemens*, 428 F.3d at 1178 (cleaned up).

A court may, however, consider how the more particularized provisions of § 455(b) apply when assessing whether § 455(a)'s more general provision is satisfied.  *See Liteky v. United States*, 510 U.S. 540, 553 (1994).  But whatever guidance a court might obtain from § 455(b), it must be mindful that § 455(a) "has a broader reach."  *Id.* at 553 n.2.  So, for example, while recusal is not required under § 455(b)(3) when a prosecutor participates in an earlier criminal prosecution that is factually unrelated to the present case, there is no such "rigid rule" under § 455(a).  *Hunt*, 153 F.4th at 864.

2.  With these legal standards in mind, we turn to the particulars of Dawson's motion.  Dawson's contention is that the combination of the undersigned's senior

prosecutorial position and participation in the proffer would lead a reasonable observer to conclude that my impartiality might reasonably be questioned.

The threshold problem for Dawson's argument is that a reasonable person would not expect that the undersigned would recall the information from the 2022 proffer, for all the reasons discussed in connection with § 455(b)(1) above. *See supra* pp. 12–16.

But Dawson's § 455(a) argument would be unpersuasive even if a reasonable person would expect the undersigned to remember the information. To be sure, in at least one respect, Dawson is correct that the undersigned's supervisory titles might tend to support the argument for recusal: unlike a U.S. Attorney to whom matters are merely imputed, the undersigned personally participated in the proffer that generated information about Dawson. And unlike a line Assistant U.S. Attorney, the undersigned had the authority to approve certain types of charges, plea agreements, the opening of investigations, and recommendations for cooperation credit. But a reasonable person assessing the situation would also be aware that the undersigned participated in the proffer not in those supervisory roles, but in the role of a line Assistant U.S. Attorney handling a case of my own. Moreover, a reasonable person would also take notice of a critical fact: although the undersigned had authority to authorize the opening of an investigation, I did not in fact do so for Dawson. The fact that the undersigned had substantial authority to take action on credible information, but did not do so, would

28

lead a reasonable observer to give *less* significance to the four sentences about Dawson in the six-page proffer report, not *more*.

A reasonable observer would also be aware that the proffered information about Dawson came from a defendant in a case that had nothing to do with Dawson; that there was no investigation open into Dawson at the time; and that the undersigned did not open an investigation against Dawson after hearing the proffered information.  That same reasonable observer would know that the proffered information does not form any part of the reactive investigation preceding the 2024 charges in this case.  And, of course, the reasonable person would be aware that the government has committed itself to not offer or bring to the court's attention the information from the proffer.  With the knowledge of these circumstances, no reasonable observer would conclude that my impartiality in this matter might reasonably be questioned.

Here again, Dawson's only answer is that the government has taken the position that the proffered information could have constituted Rule 404(b) evidence in the case. That may well be, but it in fact is not such evidence in this proceeding, because the government has committed not to offer it.

To the extent Dawson's contention is that a reasonable person necessarily would believe that a former prosecutor is unable to fairly evaluate a current prosecution of a defendant because they previously heard unrelated derogatory information about that defendant, that assertion is unsound.  Recall that the "reasonable person" is "not

someone who is hypersensitive or unduly suspicious, but rather is a well-informed, thoughtful observer." *Holland*, 519 F.3d at 913.  A reasonable person would not lightly assume that a judge's participation in even a prior prosecution or investigation of a defendant, in a former role as prosecutor, would necessarily impair a judge's ability to be impartial in an unrelated matter now before them.  That is all the more so of a judge who, as former prosecutor, merely heard information about a defendant that is unrelated to the present matter.

True, that reasonable person would want to know if there is anything unusually salacious or extreme about the information the judge heard.  The reasonable person would also want to know if the judge did anything with the information—whether starting an investigation or expressing a view that the information is credible—that might reflect an unusually strong attitude about the defendant generally, as opposed to about the specific information arose during the proffer.  And the reasonable person would want to know if the proffered information is factually linked to the current case.  But if the answers are that there was nothing exceptional about the information, the judge did nothing other than handle a matter assigned to them in the ordinary course, and the new case is not factually linked to the old one, the reasonable person would not question the judge's impartiality.

Those are the answers here.  Although invited to do so, Dawson does not suggest that one must scrutinize the particulars of the proffer information to evaluate whether

recusal is required; there is, therefore, no reason to conclude that the information is more disturbing or extreme than the routine kind of information prosecutors regularly hear in proffer interviews.  There is no evidence that the undersigned did anything or said anything that would suggest anything other than routine participation in a proffer; indeed, the evidence cuts against a finding of overzealousness toward the information, given that it is undisputed the undersigned did not open any investigation into Dawson after hearing the information and did not take any law enforcement actions relying on the information or implying that it was credible.  And it is similarly undisputed that the proffer information is unrelated to the present charges and the reactive investigation that preceded it.  *See* Dkt. No. 145, at PageID.970 ("Mr. Dawson does not contend that the Court participated in the instant prosecution or investigation[.]").  In these factual circumstances, the court finds no legitimate ground to recuse under § 455(a).

Dawson urges a different conclusion, and seeks to bolster his position by analogizing the facts of this case to those in *Hunt*, 153 F.4th 858.  But as Dawson himself recognizes, "the analysis of a particular section 455(a) claim must be guided, not by comparison to similar situations addressed by prior jurisprudence, but rather by an independent examination of the unique facts and circumstances of the particular claim at issue."  *Clemens*, 428 F.3d at 1178 (cleaned up); *see also* Dkt. No. 145, at PageID.965 (quoting *Clemens*).  In any event, the comparison to *Hunt* does not support recusal.

31

In *Hunt*, a district judge presided over a criminal case involving drug trafficking, firearm, and money laundering charges against a defendant.  The defendant in that case had previously been successfully prosecuted for gun and drug offenses when the district judge had been serving as U.S. Attorney.  *See* Dkt. No. 116 in *United States v. Dontae Lamont*, Crim. No. 02-00033 (D. Or.) (judgment sentencing defendant to 240 months' imprisonment for violations of 21 U.S.C. § 841(b)(1)(B) and 18 U.S.C. § 924(c)).  That is to say, the district court hearing the current case had not merely heard information about the defendant in the past; the judge had overseen and authorized the prosecution of the defendant in a prior case.  And because of the prior convictions (brought by the now-judge's office), the defendant was an "Armed Career Criminal" in the current case.  *United States v. Hunt*, 697 F. Supp.3d 1074, 1075 (D. Or. 2023).

Although the Ninth Circuit recognized that there is no "rigid rule that a judge can avoid recusal simply because the prior case lacks a factual relationship to the case before the judge," the court concluded that under the particular factual circumstances, the trial judge did not abuse her discretion by declining to recuse herself.  153 F.4th at 864.  It identified four sets of factual circumstances that were significant to its analysis:

First, the Ninth Circuit noted that the defendant's "current case has 'no factual connection or relationship' with his prior prosecution."  *Id.* (quoting *Silver*, 245 F.3d at 1079).  That was important, because "a judge cannot decide the *same* case in which the judge participated in or supervised as the United States Attorney."  *Id.*

32

Second, the court noted that "over fifteen years passed between" the defendant's "first prosecution and this second case." *Id.*  Although the court did not explain the significance of that passage of time, common sense supports the conclusion that the passage of time might make it possible for a person to be impartial toward a defendant's new criminal case even if they had previously committed themselves to prosecuting the defendant for a prior crime—that is, even if they had previously become convinced that a person was guilty beyond a reasonable doubt of a past crime.

Third, the Ninth Circuit noted that the trial judge had served "as the United States Attorney, and not as a line prosecutor," which the court found significant because "[m]any similar drug and felon-in-possession prosecutions likely passed through her office," and the trial judge, as U.S. Attorney, "likely was not directly involved in these commonplace criminal prosecutions." *Id.*

Fourth and finally, the court took consideration of the fact that the trial judge "stated she did not have 'any personal recollection'" of the defendant's earlier case and had "'no personal bias or prejudice' against him." *Id.*

Dawson treats these as "factors," Dkt. No. 145, at PageID.969, but it is more appropriate to view them as an example of how a court might commonsensically apply the "reasonable person" standard to the unique factual circumstances of a case.  In any event, the court readily accepts that *Hunt* provides valuable guidance.  But contrary to

Dawson's contention, the Ninth Circuit's analysis in *Hunt* strongly supports the undersigned's judgment that recusal is not warranted here.

Taking them in reverse order, Dawson admits that the fourth of the factual circumstances in *Hunt* is also present here and weighs against recusal:  the court has no recollection of any proffer information about Dawson.  Dkt. No. 145, at PageID.969.

Dawson argues that the third factual circumstance weighs in favor of recusal, but that view is mistaken.  To be sure, the Ninth Circuit noted that the trial judge in *Hunt* had served as U.S. Attorney, rather than as line prosecutor, and further noted that many routine gun-and-drug cases likely passed through the office during the trial judge's service as U.S. Attorney.  But it identified these facts not to create a rigid factor weighing against recusal when the facts are present or weighing in favor of it when they are not.  Instead, the point was that these facts supported the conclusion that a reasonable person would not expect the trial judge to recall the particulars of the past prosecution, as well as that the trial judge's less-direct involvement in that prosecution as U.S. Attorney would lead a reasonable person to be less inclined to perceive partiality in the fact that the trial judge had authorized it.

Although the factual circumstances of the present case are different—the undersigned was not a U.S. Attorney and did directly conduct the proffer at issue—the facts present here still support the conclusion that a reasonable person would not expect me to recall the details of the proffer (which I in fact do not).  *See supra* pp. 12–16.  And

the fact that the undersigned did not open an investigation of Dawson based on the

proffered information, let alone authorize or propose a prosecution of him, would be as

significant to a reasonable person's assessment of impartiality as was the former U.S.

Attorney's less-than-direct involvement in an authorized prosecution.  Accordingly, the

third factual circumstances—or, rather, the logic underlying the Ninth Circuit's

consideration of these circumstances in *Hunt*—weigh against recusal.

The second factual circumstance was that the prior prosecution in *Hunt* had

occurred some 15 years before the current case.  That mattered because the passage of

time can dissipate, from the perspective of a reasonable person, the significance of the

fact that the trial judge had previously committed herself to prosecuting the defendant

for serious federal crimes in her prior role.  Dawson contends that because the proffer

here took place in December 2022, only slightly more than three years ago, this "factor"

from *Hunt* weighs in favor of recusal.  Once again, Dawson's argument reads *Hunt* too

formulaically.  Although the proffer in this case was more recent than the prior criminal

prosecution in *Hunt*, there is another, more significant difference:  the undersigned did

not prosecute or even commit to prosecute Dawson for any crime.  Indeed, the

undersigned did not so much as open an investigation into Dawson.

While time can dissipate the significance of a prior commitment to prosecute

someone—the significance of a demonstrated belief that someone is guilty of serious

federal crimes beyond a reasonable doubt—there is less need for time to dissipate the

significance of having merely heard information on which one took no action.  As between accusing a defendant of serious crimes fifteen years earlier, on the one hand, and merely hearing (and doing nothing to credit) a proffer that a defendant had committed crimes three years ago, on the other hand, a reasonable person would not conclude that the latter situation is more likely to lead to partiality toward the defendant's present criminal case.  The second factual circumstance in *Hunt* weighs against recusal.

And that leaves the first factual circumstance:  that the prior criminal case in *Hunt* had no factual connection or relationship to the current case.  That is clearly also the case here.  No one suggests that the proffer information shared in December 2022 is part of the same course of criminal conduct as is charged in the current case.  That is why even Dawson disavows any argument that the undersigned "participated in the instant prosecution or investigation."  Dkt. No. 145, at PageID.970.  Dawson's only argument for a connection is that the proffer information could possibly constitute Rule 404(b) evidence.  But that is an unpersuasive argument for reasons already discussed: the government has committed to not offer the evidence, and the fact that the government has labeled it as Rule 404(b) evidence only *confirms* that it has no factual connection to the current charges.

And the Ninth Circuit's decision in *Hunt* shows that Dawson's argument proves too much:  the defendant's prior drug trafficking and firearm convictions in *Hunt* surely

could have constituted Rule 404(b) evidence in that defendant's new drug trafficking and firearm case.  The possible evidentiary significance under Rule 404(b) of an otherwise-unrelated prior bad act does not create a factual connection between the past bad act and the present one, at least not when the prior bad act evidence is not actually offered into evidence.  The first factual circumstances in *Hunt*, like all of the others, weigh against recusal.

The upshot is that § 455(a) does not provide a legitimate basis for the undersigned to recuse from this proceeding.  And because "in the absence of a legitimate reason to recuse himself, a judge should participate in cases assigned," *Holland*, 519 F.3d at 913 (cleaned up), the undersigned will not recuse myself here.

<u>CONCLUSION</u>

For the foregoing reasons, Dawson's motion to recuse the undersigned from this case is DENIED.

IT IS SO ORDERED.

DATED:  February 5, 2026, at Honolulu, Hawai'i.



/s/ Micah W.J. Smith
_____
Micah W.J. Smith
United States District Judge

---

Cr. No. 24-00089 MWJS, *United States v. Duane F.K. Dawson*; ORDER DENYING
MOTION TO RECUSE DISTRICT COURT JUDGE UNDER 28 U.S.C. § 455